of William Fischer. I'd like to first address the issue of whether or not Mr. Fischer has enough previous violent felony offenses. And in our brief, we argued that he did not. The district court first used the categorical approach to determine whether or not Mr. Fischer had a previous violent offense. And the district court correctly concluded that Mr. Fischer's And therefore, they went to the modified categorical approach. This was an issue that was raised at the Ameline remand hearing, isn't that correct? It was. It wasn't raised at the first sentencing hearing, right? It was not. So how do you deal with United States v. Combs? Your Honor, the case, I visualize a name, but I don't know the facts on the case. We would argue, Your Honor, that there was a new case, the Werner case that came down after the first time. Well, what United States v. Combs says, if I remember correctly, that after we do an Ameline remand, and the district court judge says, you know, had I known that the sentencing guidelines were discretionary or not binding, nonetheless, my sentence wouldn't have been any different. And then it comes back up to us. I think Combs says that basically all we can do at that stage, unless the issue was raised on appeal before, is look at whether the district court understood its obligation under Ameline. And I understand that. Which means that you can't, which Combs seems to suggest, you can't raise this new argument that you raised at the Ameline hearing. And the reason why Mr. Fisher can't raise it at this time is there was a new case, and that was the Werner case that came down. So without reading Combs, you think that there's an exception? There is an exception, Your Honor. When the new case comes down and affects the particular issue, and that's the only reason why we didn't raise it, Your Honor. Okay. Well, the new case said basically what Taylor had said, right? Well, Your Honor, the Taylor case and the distinctions between the Werner case, I do not know the exact differences and the like. I do know that this court issued Werner subsequently, and then maybe the first time that the Ninth Circuit had dealt with a Taylor issue at the Ninth Circuit level. All right. Well, let's get on to the next question, which is the entrapment by estoppel. Entrapment by estoppel happened in this particular case when Detective Schillinger was a part of the very first drug bust that happened on February the 12th of 2002. Schillinger was involved in the second one also. Now, who were the other people involved in those busts? Was it a joint state-federal bust or was it a solely federal bust or solely state? It was what they call a city-county special investigative unit. And what's the connection with the federal officials? The connection is that they completely bypassed any state organization and they went directly to the federals to prosecute this particular case. You mean the county folks went directly to the feds? Yes. They didn't prosecute this case locally. And so essentially what you have is state actors working for the federal government. They're in our small town, but you don't have, you know, federal agents independently. Now, in a case where a state city or state policeman advised to someone has been accorded what you're asking for in this case? No, Your Honor. Federal case. I'm not aware of any case. And I'm not aware of it either. I'm not aware of that whatsoever. I can just tell you for all practical purposes this individual was acting as a federal agent when they do the investigation. And then they meet with the federal prosecutors. They are essentially acting as federal agents. Well, they certainly don't represent the federal government. They represent the state government. Well, I think that they do represent the federal government. That's the essence of this whole doctrine, as it seems to me. I think they do represent the federal government when they know full well that they're going to prosecute. Well, it might be possible that they could be working on behalf of the federal government if there was some, as Judge Reinhart said, was there some cooperative arrangement, a joint federal, state, task force, county component, that they're zeroing in on a particular problem. You're telling us that doesn't seem to be what was going on here. It was more the county officials were doing their own investigation, and they decided that they could probably get a stiffer sentence or a more tougher sentence or something, and they went to the feds to prosecute. I believe that's it. Is that what happened? It is, Your Honor. There's nothing in the record that documents any of this. No. Schillinger makes reference that at the time he's talking to Fisher, he knows that there's a case being developed to charge Fisher with being an addict in possession of a firearm. And that's the excerpt from the record, and that's the documents that we have. And that's a case that the state was, those local officials were attempting to put together, or was it a case that the feds were investigating and attempting to put together? Well, he is the one, he is the investigating officer, Your Honor. He was there the very first bust, and he was a part of the second bust also. Did he say something there about the being a, when he didn't want to tell them because of the pending case? Did he say, I don't recall the transcript, but did he say it was a pending federal case? Yes. So do we know why he said there was a pending federal case? We know that they were, the pending federal case was a addict in possession of a firearm. That's. We don't know how he knew there was a pending federal case. No. And the problem is that the record's fairly bare of evidence as to what the relationship between what he was doing and the pending federal case was. I understand. Let me ask you another question apart from this particular issue. Your argument with respect to Estoppo, I guess, is that when your client asked the local police officer whether he could, whether he could own, was it own guns, or possess? Possess, yes. Possess guns, despite his prior conviction. And the cop said, I think it's okay or something, to that effect. And then he called him on the phone and said something similar. I think the second time was a little more forceful, Your Honor, a little more. He didn't tell him they also had guns that were, where the serial number was, was obliterated.  And the government. What do you do with that? Yeah, the government's arguing that nobody can own a gun that has obliterated serial numbers. I would argue, Your Honor, if it wasn't for the fact that Schillinger made these representations, and the first one, while it might have been a little gray or nebulous, the second one was much more forceful, saying that he could own them, that but for the fact that Schillinger said that, Mr. Fisher would not have any guns at all. Was it pretty, did Mr. Fisher ever say that had he been advised otherwise, he would have gotten rid of the guns? Or is that, we're just supposed to infer that? I think he did not say that, Your Honor. I would argue that, though. Your position is that a city policeman can speak on behalf of the federal government, is that right? I believe if he's the investigating officer, Your Honor. For a federal case. He says, I did not tell him about the pending federal case for addicting possession, however, because I did not want to divulge that information as of yet and risk a greater officer safety issue when the time comes to arrest him. Now, when the time came to arrest him, who made the arrest? I don't know who made the arrest. Well, were there federal officers there? You said in your small community there were no federal. Oh, there are representatives of the federal government, Your Honor. There is an FBI presence and the like. Well, maybe you're opposing counsel, Mills. You're out of time anyway, and we'll give you a minute to rebut. Thank you. May it please the Court, good morning, Your Honors. My name is Ed Zink, and I represent the government in this case. I think the Court has correctly perceived some of these issues. First of all, I believe that United States v. Combs does completely foreclose the raising of any new issues, and so I completely agree on that point. Turning to the panel's other concern regarding the estoppel argument. It wouldn't foreclose this estoppel argument, though. No, Your Honor, and I filed a 28-J letter on that point. I originally took the position that it was recluded. But it did. It doesn't. It does not. The entrapment by estoppel argument really pertains to people who have no predisposition to engage in the activity before they receive the claimed erroneous advice. In this case, the record of the case. Or who wouldn't engage in it but for the erroneous advice. Exactly, Your Honor. And if somebody calls and wants to know whether he can, and that would suggest that if they told him he couldn't, he wouldn't, that would seem to meet the standard in that respect. The problem is, Your Honor, and that's the reasoning in Talmadge, Brevner, and Hancock, the problem for Mr. Fisher is that he has already possessed firearms on numerous occasions before he ever spoke to Detective Schillinger. In fact, in the relevant conduct and in the indictment in this case, on two separate occasions before he even spoke with the detective. Well, I guess the question of whether he reasonably relied upon the representations. I agree, Your Honor. The district court didn't even get to that point. Correct. The district court said, hmm, he wasn't, you know, this cop wasn't authorized, wasn't acting on behalf of the federal government. That's correct, Your Honor. And the court also found specifically in its order that he was predisposed to possess firearms. Entrapment by estoppel focuses on the conduct of the government officials, not on the predisposition of the individual. Yes, Your Honor, it does. So you're looking at what the federal officials, you know, what the government officials did or said. Correct. Their conduct is what's at stake here. Correct. And we're looking for an affirmative misleading or some affirmative action on the part of the agent of the federal government. The problem for Mr. Fisher, again, is here a police officer is not an agent of the federal government. Well, you would agree, wouldn't you, that a local official could be working, you know, hand-in-hand with the federal government and in that situation could very well be acting on behalf of the federal government. I suppose. But the facts in this case is that Mr. Fisher was arrested by Billings police officers. The court asked that question of Mr. Duke earlier. And regarding the April 28, 2002 stop, which is the conduct issue on the estoppel issue, it was a Billings police traffic stop of a vehicle in which he was a passenger. There was no joint state, federal takedown or sting at issue here. No, but this he said the test one is there was a pending federal case for addict imposition. Was that was he arrested for that, being an addict in position? At some point the grand jury charged him with that, Your Honor. But Mr. Duke was incorrect. There were actually three state prosecutions pertaining to the drug components of these three incidences that are reflected in the record. And for the Court's information, that's documented in the PSR. Okay. And these were after this conversation with Shillington? Yes. The drug prosecutions were the initial prosecutions and the federal government indicted after they were complete. And that's reflected because these cases had all reached the sentencing stage in the PSR and were considered as criminal history points. So those state prosecutions, which Detective Schillinger was involved in, were done and complete before the federal prosecution occurred. So I would not agree that this was some joint federal state investigation and that Detective Schillinger was acting on behalf of the federal government. How do you know that a pending prosecution for addict in possession was underway? Your Honor, the City County Special Investigations Unit is basically a drug unit, but they are also involved in task forces and have information sharing and intelligence sharing that goes back and forth with agencies of the federal government, such as ATF and DEA and FBI. So was the cop part of that task force? He was part of the Special Investigations Unit. I do not know whether he was also part of a federal task force at the time. Well, I thought the theory of this thing is that if an agent of the federal sovereign represented to somebody that something was not criminal, it was unfair and there should be a stop to prosecute him. So I can't understand how a city policeman, under any circumstances, can make such a representation and stop the federal government. I completely agree, Your Honor, and the case law precludes that as well. Well, if he's part of a federal task force? That's a closer call, Your Honor, but I don't think there's any evidence here that suggests he was part of a federal task force. That was the question that we were sort of asking. I thought you were suggesting he might be part of that federal task force. No, I think they attended meetings together and shared information. The reality here is that Bill Fisher was very, very well known to local and federal law enforcement for a long time. This is a man with a lifetime of violence and crime. The only breaks in it are when he's incarcerated. And so when he's back in the community, as he was in the early months of 2002, Billings law enforcement was very much paying attention to him. Well, they really, the Billings task, Billings law enforcement officers that knew that he couldn't possess a gun, it would be unlawful for him to. I think if I understand Your Honor's question, there is no affirmative misleading here. If anything, there's an omission, and it's one made because of officer safety. And the case law deals with that, particularly the Hancock case, which is cited by the defendant. It forecloses areas that the officer did not speak about. You know, I must say it may well be that because he's a city officer that the whole doctrine doesn't apply. But to say that he didn't affirmatively mislead him and he stopped short of that, when they knew that he was prohibited from possessing a gun. They knew that at law he was prohibited, and he told them that he was not prohibited from possessing a gun. And that's fairly clear. I told him that as long as he spent his time and was not prohibited from possessing them, as a result of any of his cases, it was my understanding that he could. Now, that's just a direct misrepresentation of his legal rights. Your Honor, I would agree in part and disagree in part. It's a correct statement of the law that because of a felony he could not possess. Well, he didn't say as a result of a felony he was not possessed. He said as long as he spent his time and was not prohibited from possessing them, as a result of any of his cases, it was my understanding that he could. And that's just untrue. He didn't understand that, and he just lied to them. Now, it may be that that has nothing to do with the federal government, and therefore estoppel doesn't apply. But I think it's hard to say that he just stopped short and didn't misrepresent anything. Your Honor, this detective is very aware of Mr. Fisher's history, which includes an escape from jail and an armed robbery using sawed-off shotguns and a bomb, after which he was finally caught. And so when Detective Shiller... And it seems to me that if he was worried about safety, he would have said to him, no, you can't possess any weapons and don't do it. If you got them, get rid of them. Instead of telling him, it's okay for you to do it. Fair point, Your Honor. Ultimately, however, a lot of this argument can be set aside, and if the court doesn't wish to reach it, it doesn't have to because of the fact we have firearms with obliterated serial numbers, which he can't possess at all. The other part of the estoppel argument that fails regarding that is I think one has to reasonably presume that for the first time in his life, Mr. Fisher was inclined to follow the law. The record would indicate that that was not the case. That would indeed be the first time in his life that he decided to follow or care about the law at all, and that's completely inconsistent with everything we know about Bill Fisher. Were the guns that had the obliterated serial numbers, were they the ones that were recovered after the representation? Yes. Yes. There was only one, wasn't it? The PSR says there's only one. And the indictment reflects that there were two firearms that could not be identified by a serial number. Count three in the indictment, Your Honor, references three guns, only one of which had a serial number. Yeah. So the district court judge didn't make any determination on that, did he? He indicated that he couldn't possess the firearms at all because they were obliterated, and that was his ruling. But is that what was the only one? I guess it doesn't make any difference whether it was one or two. It does not. But it does not for the purposes of the enhancement. Right. Once we reach three guns, that two-level enhancement. He had two other guns from the other. From counts one and two, Your Honor. Right. Yes. Okay. Thank you, counsel. Thank you, Your Honors. All right. We'll give you one minute for rebuttal. Your Honor, the only thing I took note on wasn't the predisposition. I agree that that does not even come into play in this particular area of law. Which disposition? The predisposition to own firearms. So that was the only note that I had taken. Thank you, counsel. Thank you. The case just argued will be submitted. Next case on the calendar is United States v. Salazar-Lopez.
judges: Reinhardt, Paez, Cudahy